Westlaw.



United States District Court,
E.D. Pennsylvania.
Ronald E. MELHORN, Plaintiff,
v.
NEW JERSEY TRANSIT RAIL OPERATIONS, INC., Defendant.
**Civ.A. No. 98-CV-6687.**

April 3, 2001.

Former locomotive engineer brought suit against railroad under the Federal Employers' Liability Act (FELA) for injuries he allegedly suffered when train on which he was working derailed during shoving operations. On various discovery motions, the District Court, Green, Senior District Judge, held that: (1) defendant failed to demonstrate that further independent medical examinations of plaintiff were necessary; (2) defendant was required to produce surveillance tapes of plaintiff which it intended to use at trial, and surveillance tapes relied on by its medical expert in forming his expert opinion of plaintiff's alleged injuries; and (3) defendant showed good cause to compel a psychiatric examination of plaintiff after the close of discovery, on the ground that it lacked knowledge of plaintiff's psychiatric claim until discovery was completed.

So ordered.

West Headnotes

**[1] Federal Civil Procedure ⚿1654**
170Ak1654 Most Cited Cases
Railroad's motion to compel independent medical examinations of employee who brought FELA suit would be denied, where employee offered evidence the he had already submitted to three medical examinations by doctors selected by railroad, and although those examinations were conducted for company policy reasons, railroad failed to demonstrate why that factor warranted further examinations. Federal Employers' Liability Act, § 1 et seq., 45 U.S.C.A. § 51 et seq.; Fed.Rules Civ.Proc.Rule 35(a), 28 U.S.C.A.

**[2] Witnesses ⚿184(1)**
410k184(1) Most Cited Cases
The critical self-analysis privilege requires that: (1) the material must have been prepared for mandatory government reports or for a critical self-analysis and undertaken by the party seeking protection; (2) the privilege extends only to subjective, evaluative materials, but not to objective data in reports; and (3) the policy favoring exclusion must clearly outweigh plaintiff's need for the documents.

**[3] Witnesses ⚿184(1)**
410k184(1) Most Cited Cases
Critical self-analysis privilege doctrine is designed to encourage confidential self-analysis and self-criticism.

**[4] Federal Civil Procedure ⚿1274**
170Ak1274 Most Cited Cases
Opinions and documents generated or consulted by an expert retained to testify at trial are generally discoverable. Fed.Rules Civ.Proc.Rule 26(b)(4), 28 U.S.C.A.

**[5] Federal Civil Procedure ⚿1599**
170Ak1599 Most Cited Cases
Railroad was required to produce surveillance tapes of employee which it intended to use at trial in FELA suit, and surveillance tapes relied on by its medical expert in forming his expert opinion of employee's alleged injuries, notwithstanding railroad's objection that tapes should not be disclosed until after employee was deposed regarding his injuries, where railroad already had a previous opportunity to fully depose employee regarding his injuries. Federal Employers' Liability Act, § 1 et seq., 45 U.S.C.A. § 51 et seq.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**[6] Federal Civil Procedure ⚷1327.1**
170Ak1327.1 Most Cited Cases
Preserving impeachment value of surveillance tapes taken of FELA plaintiff after his initial deposition by railroad did not warrant subjecting plaintiff to another deposition, since railroad was free to explore issues of extent of plaintiff's disabilities and injuries at trial. Fed.Rules Civ.Proc.Rule 26(b)(2), 28 U.S.C.A.

**[7] Federal Civil Procedure ⚷1654**
170Ak1654 Most Cited Cases
Defendant showed good cause to compel a psychiatric examination of plaintiff after the close of discovery, on the ground that it lacked knowledge of plaintiff's psychiatric claim until discovery was completed; contrary to plaintiff's contention, it was not clear that defendant could have determined from subpoenaed medical records that plaintiff would raise a psychiatric claim, and there was no evidence that conclusively established that defendant received plaintiff's psychiatric report before the close of discovery. Fed.Rules Civ.Proc.Rule 35(a), 28 U.S.C.A.
*177 Marvin I. Barish, Gregory L. Nester, David A. O'Brien, Law Offices of Marvin I. Barish, P.C., Philadelphia, PA, for plaintiff.

C. Curtis Staropoli, Gallagher, Reilly, Lachat & Egbert, Paul F. X. Gallagher, Dawn L. Jennings, Jessica E. Gensler Lippy, Gallagher, Rowan & Egbert, P.C., Philadelphia, PA, for defendant.

***MEMORANDUM***

GREEN, Senior District Judge.

Presently before the court in the above referenced matter are five discovery motions and the responses thereto. For the reasons stated below, (1) Defendant's Motion to Compel Plaintiff's Independent Medical Examination will be denied; (2) the decision on Plaintiff's Motion to Compel Production of an Unredacted Copy of Defendant's Supervisor's Investigation Report of Personal Injury will be deferred; (3) Plaintiff's Motion to Compel Defendant to Produce will be granted; (4) Defendant's Motion to Compel the Activities Deposition of Plaintiff will be denied; and (5) Defendant's Motion to Compel the Psychiatric Examination of Plaintiff will be granted.

**I. FACTUAL HISTORY**

On or about August 28, 1998, Plaintiff Ronald E. Melhorn allegedly suffered injuries during the course and scope of his employment as a locomotive engineer with Defendant New Jersey Transit Rail Operations, Inc. (*See* Compl. ¶ 5.) Plaintiff avers that he sustained a cervical herniated disc and impingement syndrome of the right shoulder and developed a depressive disorder after a train on which he was working derailed during shoving operations. (*See* Pl.'s Mot. to Compel Unredacted Copy of Def.'s Supervisor's Investigation Report of Personal Injury, ¶ 2.) As a result of his injuries, Plaintiff allegedly remains permanently disabled from resuming any form of employment. (*See id.* ¶ 4.) On December 24, 1998, Plaintiff instituted this action against Defendant under the Federal Employers' Liability Act, 45 U.S.C. §§ 51, *et seq.* (FEL A); Federal Safety Appliance Act, 45 U.S.C.A. §§ 1, *et seq.*, recodified in 49 U.S.C.A. § 20301, *et al.* By Order of this court, discovery was to terminate on December 29, 2000. (*See* Order, September 21, 2000.) A total of five motions were filed by both parties between November 6, 2000 and January 17, 2001.

**II. DISCUSSION**

***A. Defendant's Motion To Compel Plaintiff's Independent Medical Examination***

Fed.R.Civ.P. 35(a) states that:

> When the mental or physical condition ... of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner.... The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

made.

[1] In the present matter, Defendant moves to compel Plaintiff to appear for two independent medical examinations, one with Gary Alweiss, M.D. (Dr. Alweiss) and the other with David Greifinger, M.D. (Dr. Greifinger). Although Plaintiff was previously examined by both Drs. Alweiss and Greifinger, ***178** [FN1] Defendant contends that those examinations were not performed as independent medical examinations but, rather, to comply with Defendant company's policy as to employee examinations. Furthermore, Defendant argues Plaintiff has placed his physical condition at issue.

FN1. Plaintiff offered evidence that he was examined by (1) Dr. Alweiss on October 5, 1998; (2) Dr. Greifinger on February 2, 1999; and (3) Dr. Greifinger on November 17, 1999. (*See* Pl.'s Ex.s A, B, C.)

Plaintiff opposes Defendant's motion on the ground that Defendant has failed to show that the independent examinations are warranted by good cause. Plaintiff argues that Defendant has "neither shown nor alleged a change in circumstances that would warrant the subsequent exams it now seeks." (Pl.'s Resp. at 2.) Plaintiff considers the purpose of his previous medical examinations--whether the doctors examined Plaintiff for company policy reasons or for litigation purposes--irrelevant when assessing whether Plaintiff should submit to further examinations.

I find that Defendant failed to demonstrate good cause for subjecting Plaintiff to further medical examinations. Plaintiff offered evidence that he submitted to three medical examinations with doctors selected by Defendant. (*See* Pl.'s Ex.s A, B, C.) Although those examinations may have been conducted for company policy reasons, Defendant has failed to demonstrate why that factor warrants further examinations. The evidence shows that Plaintiff was examined once after the claimed injury but before he filed the instant lawsuit and twice thereafter. (*See* Pl.'s Ex.s A, B, C.) Thus, Defendant had notice of the injury and pending lawsuit during Plaintiff's last two examinations. Accordingly, Defendant's Motion to Compel Plaintiff's Independent Medical Examination will be denied.

***B. Plaintiff's Motion to Compel Production of an Unredacted Copy of Defendant's Supervisor's Investigation Report of Personal Injury***

[2][3] Pursuant to Fed.R.Civ.P. 26(b)(1), a party may discover any relevant matter which is "not privileged." Fed.R.Evid. 501 provides the framework for determining whether information is "privileged." *See Robinson v. Magovern,* 83 F.R.D. 79, 84 (W.D.Pa.1979). Under Fed.R.Evid. 501, the federal common law of privilege applies to federal question cases. [FN2] Defendant claims the self-analysis privilege. Where public policy outweighs the needs of litigants and the judicial system for access to information relevant to litigation, some courts have employed the critical self-analysis doctrine. *See, e.g, Granger v. Nat'l Railroad Passenger Corp.,* 116 F.R.D. 507 (E.D.Pa.1987); *Webb v. Westinghouse Electric Corp.,* 81 F.R.D. 431 (E.D.Pa.1978). The critical self-analysis privilege requires that:

FN2. Fed.R.Evid. 501 provides in relevant part:
Except as otherwise required by the Constitution of the United States or provided by Acts of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the Courts of the United States in the light of reason and experience.

(1) The material must have been prepared for mandatory government reports or for a critical self-analysis and undertaken by the party seeking protection;
(2) The privilege extends only to subjective, evaluative materials, but not to objective data in reports; and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(3) The policy favoring exclusion must clearly outweigh plaintiff's need for the documents.

*Clark v. Pennsylvania Power & Light Co., Inc.*, 1999 WL 225888, at *2 (E.D.Pa., April 14, 1999) (citing cases). The doctrine is designed to encourage confidential self-analysis and self-criticism.

Plaintiff moves to compel the production of an unredacted copy of Defendant's supervisor's investigation report of personal injury ("Report"). Specifically, Plaintiff seeks to discover text of a section entitled "What Steps Were Taken to Prevent Similar Injuries." Plaintiff argues that the unredacted Report is discoverable on two grounds: (1) the Report was created in the normal course of business and is therefore unprotected by the work product doctrine; and (2) the Report ***179** fails to meet the requirements for protection under the critical self-analysis privilege. Defendant concedes that the Report was prepared in the normal course of business. However, Defendant argues that the portion Plaintiff seeks is protected by the critical self-analysis privilege. Defendant contends that the redacted portion of the Report is "subjective and evaluative, not objective." (Def.'s Resp. at 8.)

At present, the court has not been presented with an unredacted copy of the Report and is unable to determine whether the redacted material is protected by the critical self-analysis privilege. The court is unable to surmise whether the unredacted Report contains subjective, rather than objective material. Therefore, the decision on Plaintiff's motion will be deferred pending Defendant submitting an unredacted copy of the Report to the court for an in camera inspection.

***C. Plaintiff's Motion to Compel Defendant to Produce***

[4] "Almost uniformly, [ ] courts have held that evidentiary films or videotapes must be provided to the opposing party prior to trial." *Corrigan v. Methodist Hosp.*, 158 F.R.D. 54, 59 (E.D.Pa.1994) (quoting *Fisher v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 145, 150 (S.D.Ind.1993)). "Before any of these disclosures, however, the defense must be given an opportunity to depose the plaintiff fully as to his injuries and their effects and his present disabilities." *Snead v. American Export-Isbrandtsen Lines,* 59 F.R.D. 148, 151 (E.D.Pa.1973). Opinions and documents generated or consulted by an expert retained to testify at trial are generally discoverable. *See* Fed.R.Civ.P. Rule 26(b)(4). [FN3]

FN3. Fed.R.Civ.P. 26(b)(4) governs "discovery of facts known and opinions held by experts ... acquired or developed in anticipation of litigation or for trial." "This rule has been broadly interpreted to authorize disclosure of both expert opinions and 'all the documents the expert generated or examined in the process of forming those opinions.' " *Krisa v. Equitable Life Assurance Soc'y,* 196 F.R.D. 254, 257 n. 2 (M.D.Pa.2000).

[5] Plaintiff moves to compel Defendant to produce three categories of materials on grounds that those items are discoverable and were designated for disclosure. (*See* Pl.'s Ex. D.) Plaintiff seeks to discover "[1] various materials defendant has agreed to produce that it continues to withhold; [2] surveillance tapes defendant continues to withhold; [and 3] accident reports and related materials." (Pl.'s Mem. Supp. Mot. to Compel at 1.) Plaintiff argues that the surveillance tapes are discoverable because Dr. Greifinger, one of Defendant's medical experts, relied on those materials in forming an opinion about Plaintiff's condition. (*See* Pl.'s Ex. B.)

Defendant responds that it has fully complied with Plaintiff's discovery requests. First, Defendant contends that it has produced the various materials, accident reports and related materials that Plaintiff seeks. Second, Defendant acknowledges that surveillance was conducted in 1998, 1999 and 2000 but argues against disclosing the existence of surveillance films or tapes until after Plaintiff is deposed regarding his injuries, their effects and his present disabilities. Moreover, Defendant argues that the surveillance conducted in 1998 and 1999 are not discoverable, because it does not intend to use them at trial.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

To the extent that Defendant has produced the various materials, accident reports and related materials that Plaintiff seeks, Plaintiff's motion to compel those materials are moot. [FN4] With respect to the surveillance tapes, however, Defendant must provide Plaintiff with any surveillance tapes that it intends to use at trial. [FN5] Moreover, Defendant ***180** must provide Plaintiff with all surveillance materials relied on by Dr. Greifinger in forming his expert opinion. At a minimum, those materials include the November 4, 1998 and November 6, 1998 surveillance video tapes mentioned by Dr. Greifinger in his letter to Defendant's representative. [FN6] (*See* Pl.'s Ex. B.) For the reasons already stated, Plaintiff's Motion to Compel Defendant to Produce will be granted.

FN4. The court accepts Defendant's representation that it has produced the aforementioned materials to Plaintiff. If Defendant's representation is inaccurate, Plaintiff may refile his motion to compel the production of those materials and, if appropriate, move for the imposition of sanctions.

FN5. Defendant's attempt to withhold the surveillance materials because Plaintiff has not been deposed fully is unsupported by caselaw and the facts. Caselaw establishes that a defendant may withhold disclosures until the defendant has had an opportunity to fully depose the plaintiff. *See Snead,* 59 F.R.D. at 151. In the present matter, Defendant deposed Plaintiff on July 13, 2000. Defendant had an opportunity to fully depose Plaintiff regarding his injuries and their effects and any present disabilities at that time. Therefore, Defendant may not withhold the surveillance materials under the principles articulated in *Snead.*

FN6. Generally, materials that will not be used at trial are privileged under the work product doctrine. *See Gibson v. Nat'l R.R. Passenger Corp.,* 170 F.R.D. 408, 410 (E.D.Pa.1997). Parties, however, are entitled to materials relied on by expert witnesses. *See Krisa.* 196 F.R.D. at 257. Defendant's assertion that it does not intend to use the 1998 and 1999 surveillance at trial does not preclude the production of those materials if they were relied on by Dr. Greifinger in formulating his opinion regarding Plaintiff's condition.

***D. Defendant's Motion to Compel the Activities Deposition** of Plaintiff*

[6] Fed.R.Civ.P. **30(a)(2)**(B) states that leave of court must be granted before a deponent may be deposed more than once. A court should apply the standards enunciated in Fed.R.Civ.P. **26(b)(2)** when granting or denying leave. *See* Fed.R.Civ.P. **30(a)(2** ). Fed.R.Civ.P. 26(b)(2) gives courts the power to limit discovery methods upon a finding that:

> (i) the discovery is unreasonably cumulative or duplicative or can be obtained from some other source that is more **convenient,** less burdensome or less expensive; (ii) the person seeking discovery has had ample **opportunity** already to obtain the information sought; or (iii) the burden or expense of taking the discovery outweighs its likely **benefit**....

Absent some showing of need or good reason for doing so, a deponent should not be required to appear for a second **deposition**. *See* Fed.R.Civ.P. **26(b)(2), 30(a)(2)**.

Defendant moves to compel a second **deposition** of Plaintiff on the ground that it did not have an **opportunity** to fully explore Plaintiff's disabilities and injuries. Specifically, Defendant seeks to preserve the impeachment value of surveillance which was taken after Plaintiff's initial **deposition** on July 13, 2000. In response, Plaintiff argues that Defendant has failed to establish good cause to warrant a second **deposition.** Plaintiff contends that Defendant's motion should be denied and a protective order should be granted on Plaintiff's behalf pursuant to Fed.R.Civ.P. **26(b)(2)**.

Upon consideration of the instant motion and response thereto, I find that Defendant has failed to show good cause for conducting a second

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

203 F.R.D. 176



deposition of Plaintiff. Preserving the impeachment value of surveillance conducted after Plaintiff's initial deposition does not warrant subjecting Plaintiff to another deposition. Defendant is free to explore those issues at trial. With respect to Plaintiff's request for a protective order, I find that Plaintiff has not presented the court with good cause for issuing a protective order under Fed.R.Civ.P. 26(b)(2). For the foregoing reasons, Defendant's *Motion to Compel the Activities* Deposition of Plaintiff will be denied.

***E. Defendant's Motion to Compel Psychiatric Examination of Plaintiff***

[7] Fed.R.Civ.P. 35(a) provides in pertinent part:

> When the mental or physical condition ... of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner.... The order may be made only on motion for good cause shown....

Defendant moves to compel the psychiatric examination of Plaintiff on the ground that it lacked any knowledge of Plaintiff's psychiatric claim until discovery was completed. Defendant argues that Plaintiff, at his deposition dated July 13, 2000, denied that he was ever treated by a psychiatrist or psychologist, but then submitted a psychiatric report from Dr. Timothy Michal (Dr. Michal), which Defendant claims it received after the close ***181** of discovery on January 4, 2001. (*See* Pl.'s Dep. at 98: 21-23.) As a result, Defendant allegedly did not have an opportunity to explore the psychiatric injuries and damages claimed by Plaintiff. Plaintiff responds that Defendant was aware of Plaintiff's potential psychiatric claim approximately ten months before the discovery deadline. On March 15, 2000, Plaintiff contends that Defendant subpoenaed the records of Shawnee Medical Group, Plaintiff's general practitioners, which states that Plaintiff suffers from and is receiving treatment for depression. (*See* Pl.'s Ex.s B, C.) In addition, Plaintiff argues that Dr. Michal's report was submitted prior to the discovery deadline on December 15, 2000. (*See* Pl.'s Ex. E.)

After reviewing the evidence, I find that Defendant has shown good cause to compel the psychiatric examination of Plaintiff. Contrary to Plaintiff's contention, it is unclear that Defendant could determine, from the records of Shawnee Medical Group, that Plaintiff would raise a psychiatric claim. [FN7] Furthermore, there is no evidence that conclusively establishes that Defendant received Dr. Michal's report before the close of discovery. Under such circumstances, Defendant should not be foreclosed from conducting a psychiatric examination of Plaintiff where Plaintiff has placed his mental condition at issue. Thus, Defendant's Motion to Compel the Psychiatric Examination of Plaintiff will be granted. &