UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DENISE CROWE | : | |
| VS. | : | C.A. No. 05-098T |
| ROBERT C. MARCHAND, MD; SOUTH COUNTY ORTHOPEDIC & PHYSICAL THERAPY, INC. | : | |

**PLAINTIFF'S MOTION IN LIMINE**

Now comes your Plaintiff, Denise Crowe, and moves for an Order of this Honorable Court precluding the introduction of evidence at trial, in this matter that Plaintiff's injury and condition worsened as a result of her receiving nor occupational therapy from November 6, 2003 to December 29, 2003, and ceasing occupational therapy as of January 26, 2004. As grounds for her Motion, Plaintiff relies on the attached Memorandum of Law, which is filed contemporaneously herewith.

**WHEREFORE,** the Plaintiff's Motion in Limine should be granted.

Plaintiff,
By and Through Her Attorney,

Thomas A. Tarro, III #2046
THE LAW FIRM OF THOMAS A. TARRO, III
The Summit East - Suite 330
300 Centerville Road
Warwick, Rhode Island 02886
(401) 737-7200
(401) 732-3362 (fax)

**CERTIFICATION**

I, the undersigned, hereby certify that I mailed a copy of the foregoing ***Motion in Limine*** on the 19th day of May, 2006, to:

David Carroll, Esq.
ROBERTS CARROLL FELDSEIN & PEIRCE
10 Weybosset Street
Providence, RI 02903

Ashley Tancrates

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DENISE CROWE :

VS. : C.A. No. 05-098T

ROBERT C. MARCHAND, MD; :
SOUTH COUNTY ORTHOPEDIC & :
PHYSICAL THERAPY, INC. :

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION IN LIMINE**

Now comes your Plaintiff, Denise Crowe, and moves for an Order of this Honorable Court precluding the introduction of evidence at trial, in this matter that Plaintiff's injury and condition worsened as a result of her not receiving occupational therapy from November 6, 2003 through December 29, 2003 and ceasing occupational therapy as of January 26, 2004.

**FACTUAL BACKGROUND**

This matter arises out of a Complaint for medical malpractice brought against the Defendant Robert Marchand, M.D. alleging negligence with respect to the diagnosis, care, and treatment the Plaintiff received after sustaining an injury to her right wrist on October 20, 2002 in a rollerblading fall.

Pertinent to the instant Motion, on or about March 16, 2006, the Plaintiff received the Defendant Marchand's Motion for Leave to Amend Answer and to Supplement Answers to Interrogatories. Specifically, the Defendant sought leave to amend his Answer to add a Fourth Affirmative Defense of Doctrine of Avoidable Consequences or Failure to Mitigate Damages. The Defendant further sought to amend is Answer to Interrogatory No. 18, as follows:

> **INTERROGATORY NO. 18**: Do you contend that a person, other than yourself, was responsible for the injuries sustained by the Plaintiff? If so, for each such person, state:

a. His/her name, address and job title or capacity; and

b. The facts on which you base your contention that he/she was responsible for Plaintiff's injuries;

**ANSWER:** Objection is made to this interrogatory inasmuch as the thrust of same is to make this Defendant an expert for the Plaintiff. The Defendant declines to be an expert for the Plaintiff, and based on the law of the State of Rhode Island, may not be such expert. In any event, I was not responsible for any injury to the Plaintiff.

**SUPPLEMENTAL ANSWER:** As previously stated, I was not responsible for any injury to the patient. I make no such contention.

**FURTHER SUPPLEMENTAL ANSWER:** Plaintiff, herself, has contributed to the extent of her injuries due to her not continuing with occupational therapy, thereby worsening her condition.

The Plaintiff objected to the Defendant's Motions and the matter was heard by Magistrate Judge Martin on April 26, 2006. After hearing, the Court granted the Defendant Marchand's Motion for Leave to Amend Answer and Supplement Answers to Interrogatories, with the condition that the Defendant, must if requested by Plaintiff make his medical experts Drs. Leslie and Nalbuff available to the Plaintiff for second deposition within 30 days of the date of the Order. Such second deposition shall be limited to the subject of whether Plaintiff's alleged failure to continue with physical therapy contributed to her injury.

Plaintiff anticipates that the Defendant will seek to introduce evidence at trial suggesting that the Plaintiff's condition has worsened as a result of her decision to cease occupational therapy after January 26, 2004, and not receiving occupational therapy from November 6, 2003 to December 29, 2003. Said testimony would be introduced in support of the Defendant's newly asserted

Fourth Affirmative Defense of Avoidable Consequences and Failure to Mitigate Damages[1].

Plaintiff now seeks an Order of the Court precluding any evidence from the defense experts or any other defense witness, at trial, to the effect that the Plaintiff's injury and condition worsened, as a result of her not undergoing occupational therapy during the period of time from November 6, 2003, to December 29, 2003, and ceasing occupational therapy as of January 26, 2004.

**LEGAL ARGUMENT**

The Plaintiff's Motion in Limine to preclude evidence that Plaintiff's condition worsened as a result of not receiving occupational therapy for a period of time and ceasing occupational therapy as of January 26, 2004, should be granted, where said testimony is irrelevant and entirely speculative, lacks any necessary causal connection and would unduly prejudice the Plaintiff, pursuant to Rule 402 and 403 of the Federal Rules of Civil Procedure.

From the outset, Rules 402 and 403 of the Federal Rules of Civil Procedure provide as follows:

> **Rule 402. Relevant Evidence Generally Admissible; Irrelevant Evidence Inadmissible.** All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by act of Congress, by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.
>
> ***
>
> **Rule 403. Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion or Waste of Time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the

[1] Plaintiff's counsel has determined that it is not necessary to reopen the depositions of the Defendant's experts with regard to the said Fourth Affirmative Defense, where none of the experts' reports or deposition testimony, including the Defendant, himself, offer any opinions that as a result of the Plaintiff's ceasing occupational therapy on January 26, 2004 and undergoing no occupational therapy sessions for the period of time from November 6, 2003 to December 29, 2003, the Plaintiff's condition worsened.

> danger of unfair prejudice, confuse of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**A. Evidence that Plaintiff's condition worsened as a result of not receiving occupational therapy for a period of time and ceasing occupational therapy as of January 26, 2004, is irrelevant, and therefore, should be precluded under Rule 402 of the Federal Rules of Evidence.**

The Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Along these lines, it is inconceivable how evidence that the Plaintiff did not receive occupational therapy from November 6, 2003 to December 29, 2003 and ceased occupational therapy as of January 26, 2004, somehow contributed or worsened the Plaintiff's present condition, because such evidence would be purely speculative.

The Defendant has identified three medical expert witnesses to testify on his behalf, and namely Drs. Nalebuff, Leslie and the Defendant himself. The defense experts have set forth their opinions, which they intend to offer at trial in the Defendant's Answer to the Expert Interrogatory propounded by the Plaintiff, in the defense expert's individual Expert Disclosure Reports, pursuant to Rule 26, and in testimony offered at deposition.

With respect to the instant Motion, the Plaintiff urges this Court to recognize that neither Drs. Nalebuff nor Leslie offered <u>any opinions</u> in the Answer to the Expert Interrogatory, their respective expert reports, nor in their deposition to the effect that the Plaintiff's condition worsened as a result of not receiving occupational therapy for a period of time from November 6, 2003 to December 29, 2003 and ceasing occupational therapy as of January 26, 2004. Further along these lines, it is undisputed that neither of the Defendant's expert witnesses ever examined the Plaintiff <u>at any time</u> to determine her condition at the time that she

was undergoing occupational therapy in the fall of 2003 and subsequent thereto and up to the present time. Accordingly, both Drs. Nalebuff and Leslie should be precluded from offering any testimony, at trial, on the issue of mitigation of damages where they did not disclose any such opinions in this area in a timely manner during discovery. Moreover, based on the fact that the defense experts never examined the Plaintiff during the relevant period of time, any testimony that they may offer on this issue would be purely speculative, and therefore, irrelevant pursuant to Rule 402.

For his part, Dr. Marchand did not offer any expert testimony in his Answer to the Expert Interrogatory nor in his expert disclosure report to the effect that the Plaintiff's condition somehow worsened because she did not receive occupational therapy for a short period of time in November to December 2003 and ceased occupational therapy as of January 2004. The only opinions that he has offered in this regard were set forth in his deposition, wherein he testified as follows:

> Q. And I direct your attention to the supplemental response to Interrogatory Number 18 and the supplemental response is as follows: "Plaintiff herself has contributed to the extent of her injuries due to her not --
> A. Sorry. Okay.
> Q. -- due to her not continuing with her occupational therapy, thereby worsening her condition." What do you base that on, Doctor?
> A. I based it on after she had her surgery, I believe she stopped her physical therapy.
> Q. When did she stop her physical therapy?
> A. I don't exactly know. I heard she stopped therapy after her surgery. The specific date I don't have.
> Q. What was the status of her condition when she stopped physical therapy?
> A. She didn't come back to see me. I had just heard that she stopped therapy.
> Q. Who did you hear that from?

A. Through the process of discovery. I don't have a specific person or date.
Q. Have you reviewed any reports of any physical therapist or orthopedic surgeons or physicians concerning the treatment that was provided to Denise Crowe after she left your care?
MS. PETTEY: Objection.
A. No, just her medical record.
Q. Okay. So you didn't review any of the records of Dr. Akelman with regard to the surgery he performed?
A. No.
Q. Did you review any medical records concerning physical therapy treatment that Denise Crowe received subsequent to the surgery performed by Dr. Akelman?
A. Did I review physical therapy records, no.
Q. Did you have any discussions with Denise Crowe directly concerning the medical care and treatment that she received after the surgery provided by Dr. Akelman?
A. I haven't spoken to her in years.
Q. Now, you indicated in your response that her condition worsened. To what extent did it worsen?
MS. PETTEY: Objection. That's an entire --
MR. TARRO: You can answer, Doctor.
A. Say it again. Say your question again, please.
Q. According to your response you said, "The plaintiff herself has contributed to the extent of her injuries due to her not continuing with her occupational therapy, thereby worsening her condition." Could you tell me how her condition worsened?
A. I think any time you have physical therapy and you stop it, for whatever reason, you have the potential to lose more motion, lose more strength and have a dysfunctioning hand or wrist.
Q. Well, how do you know that has occurred with Denise Crowe?
A. How do I know? I don't know, but any time it's been stopped, I assume that's going to occur.
Q. So it's speculation on your part?
MS. PETTEY: Objection.
MR. GRIECO: Objection.
A. I haven't examined Denise Crowe.

***

Q. With regard to her condition, do you know what
her condition is today?
A. I have no idea. (Deposition Tr. Robert Marchand, M.D., pp. 53-56).

As clearly conceded by Dr. Marchand in his deposition, he is unable testify to any requisite degree of medical certainty that the Plaintiff's condition worsened as a result of not receiving occupational therapy for a short period of time and ceasing occupational therapy as of January 26, 2004. Along these lines, Dr. Marchand acknowledges that he did not review any of the physical therapy records subsequent to Denise Crowe's surgery, nor has he examined her since he last saw her on February 26, 2003; prior to her surgery by Dr. Akleman. Moreover and more importantly, Dr. Marchand concedes that he has no knowledge as to the Plaintiff's present condition. To the contrary, Dr. Marchand's testimony merely sets forth his speculation and "assumption" that the Plaintiff somehow contributed to the extent of her injuries by not receiving occupational therapy for a period of time and stopping occupational therapy.

Dr. Marchand's testimony is clearly based on speculation, on his part. Accordingly, any testimony from Dr. Marchand on this issue should be precluded as it is clearly irrelevant.

**B. <u>Evidence that Plaintiff's condition worsened as a result of not receiving occupational therapy for a period of time and ceasing occupational therapy as of January 26, 2004, lacks any causal connection between Plaintiff's present condition and any alleged failure to mitigate damages.</u>**

The law is well settled that the doctrine of mitigation of damages imposes on a party injured by either a breach of contract or a tort the duty to exercise reasonable diligence and ordinary care in attempting to minimize its damages. *<u>Fleet National Bank vs. Anchor Media Television, Inc.</u>*, 45 F.3d 546, 561 (1st Cir. 1995); *Black's Law Dictionary 1002* (6th Ed. 1990).

In order for the Defendant to prevail on the Affirmative Defense of Failure to Mitigate Damages, he has the burden to show that the Plaintiff acted in such a

way which was contrary to her physician's orders, restricting activities during the period of her recovery, and as a result, the Plaintiff aggravated or prolonged her injury. *Tomaino vs. Concord Oil of Newport, Inc.*, 709 A.2d 1016, 1026 (RI 1998); See also *McFarland vs. Brier,* 769 A.2d 605, 610 (RI 2001) (When mitigation of damages is at issue, the Defendant has the burden of proving by affirmative evidence, that the Plaintiff failed to adequately mitigate his or her damages.) In this regard, the Defendant must show the Plaintiff's failure to mitigate damages proximately caused the Plaintiff's worsened condition. More importantly, the Defendant must prove by competent medical evidence that the Plaintiff's worsened condition was proximately caused by her conduct.

On the issue of mitigation of damages, the United States Court of Appeals for the First Circuit in *Fleet National Bank* stated:

> "The doctrine thus *presupposes*, as a threshold matter, the existence of a causal nexus between the damages sought and the breach or tort, looking at whether and to what extent an intervening cause (i.e., a plaintiff's own negligence) may have contributed to these damages." *Id.*

Along these lines, the Defendant will most probably seek to offer evidence through Lynne Benavides (an occupational therapist) to the effect that the Plaintiff did not receive any occupational therapy from November 6, 2003, to December 29, 2003 and ceased her occupational therapy as of January 26, 2004. In this regard, Ms. Benavides testified at her deposition as follows:

> Q. Okay. Now, can I direct your attention to an October 20 note of yours, and tell us what Bates stamp page that is, please?
> A. 18.
> Q. As of that date, the patient had stopped her physical therapy because her -- her health insurance needed another order from her doctor; is that right?

A. She did not stop her therapy, the insurance stopped her therapy.
Q. That's what I meant. She stopped therapy because the insurance company wouldn't pay for it another order from her doctor --
A. Right.
Q. -- right? Okay.
A. Correct.
Q. And you made this note to reflect that fact, right?
A. Yes.
Q. And then the patient, in fact, returned to her doctor to get that order?
A. Yes. (Deposition Tr. Lynne Benavides pp. 39-40)

***

Q. Okay. Now, the Assessment and Plan section, four lines down there's a sentence reads, A new prescription was given to her for aggressive hand therapy, do you see that?
A. Yes.
Q. And that was in the wake of your October 20 note indicating that the patient needed another doctor's order for her insurance company to pay for more hand therapy sessions, right?
A. Yes.
Q. Do you know when it was the next time she returned for hand therapy after her -- this November 6 visit with Dr. Leon?
A. December 29.
Q. Do you have any information as to why there was a month and some 3 week delay between when the new prescription was given for her hand therapy and when she returned for therapy?
A. No.
Q. Now, can I ask you to return to your October 29, 2003 initial evaluation?
THE DEPONENT: October or December?
Q. I don't know why I'm so bad with these dates today, I'm sorry. Thank you. December 29, 2003?
A. Page 33.

Q. Thank you. And would you -- and if you want, I'll make it easy for you, I'm going to put in front of you as well -- I thought I was going to make it easy for you -- here it is. I'm going to place in front of you the October 17, 2003 reevaluation that you did, which is page 19, could you tell us whether there are any decreases in the patient's range of motion of her wrist between October 29 -- I'm sorry, October 17 and December 29?
A. Yes.
Q. What were those?
A. Her wrist flexion had decreased. Her wrist extension had decreased a degree.
Q. Anything else?
A. Supination had decreased actively.
Q. How about her grip strength, had that changed between October 17 and December 29?
A. It decreased.
Q. Okay. Now, you explained to me a little bit ago about the importance of consistency of a patient's participation in a therapy program, do you remember talking about that?
A. Yes.
Q. Would you ascribe these decreases in Ms. Crowe's motion in her wrist between October 17 and December 29 as being related to her lack of therapy during that period of time?
A. Yes.
Q. Do you know of any other factor, other than her lack of therapy during that period of time, that caused a decrease in her functionality of her right wrist?
A. No. (Id. at pp. 43-45)

Ms. Benevides is <u>not</u> a medical expert witness in this matter. As such, she cannot (and she did not) offer any testimony to the requisite degree of medical certainty indicating a causal connection between the lack of occupational therapy and Plaintiff's present condition, nor whether ceasing occupational therapy in anyway worsened the Plaintiff's condition.

For her part, the Plaintiff testified at her deposition that she recalled having to obtain a new prescription for additional hand therapy in October 2003. Along

these lines, she testified that she made the necessary arrangements to be seen by Dr. Daleon on October 6, 2003, in order to obtain the new prescription. (Deposition Tr. Denise Crowe at p. 108). She further testified that subsequent to obtaining the prescription and learning that her health insurance company, Neighborhood Health, had approved additional hand therapy, she contacted Rhode Island Hospital Physical Therapy Department and made an appointment to continue her therapy. (Id at pp. 109 - 110.) The Plaintiff further testified that after January 26, 2004, she did not attend any further occupational therapy treatments because of family problems, and specifically, her three children had become infected with head lice[2]. Moreover, the Plaintiff was finding it more and more difficult to take time out of work, in order to go to occupational therapy, and she feared that she might lose her job. (Id. at pp. 114 – 123).

Lynne Benavides is the only medical provider who saw the Plaintiff during the period of time from November 6, 2003 through January 2004. As stated previously, the Defendant Marchand never saw nor treated the Plaintiff after her hand surgery by Dr. Akleman in May 2003. Moreover, neither of Defendant's other medical expert witnesses, Drs. Nalebuff and Leslie, ever examined the Plaintiff at any time.

None of the Defendant's expert medical witnesses have offered any opinion that the Plaintiff's lapse of occupational therapy from November to December 2003 and ceasing occupational therapy in January 2004 proximately caused the Plaintiff's condition to worsen. Along these lines, it is the Defendant's burden to prove that her present condition was worsened as a result of her conduct, and that her present condition would have improved had she received occupational therapy during the short period from November through December 2003 and continued her occupational therapy sessions up until the approved time in February 2004. Based on the expert disclosure and deposition testimony, it is clear that none of the defense experts are able to offer such an opinion

[2] Plaintiff's second course of occupational therapy was to end on February 29, 2004.

Accordingly, any such testimony from them on this issue would be purely speculative, in nature, and clearly lacking the necessary nexus required under the doctrine of mitigation of damages, as noted in *Fleet National Bank v. Anchor Media Television, Inc.*

**C. Evidence that Plaintiff's condition worsened as a result of not receiving occupational therapy for a period of time and ceasing occupational therapy as of January 26, 2004, should be precluded at trial pursuant to Rule 403 of the Rules of Evidence where any probative value of such evidence is clearly outweighed by the danger of prejudice to the Plaintiff.**

Plaintiff submits that in the event this Court finds the evidence is in someway relevant to the instant matter, any such probative value is clearly outweighed by the undue prejudice to the Plaintiff. Therefore, the evidence should be precluded pursuant to Rule 403 of the Federal Rules of Evidence.

It is the Defendant's burden to prove by offering affirmative evidence that the Plaintiff failed to adequately mitigate her damages. *McFarland vs. Brier*, 769 A.2d 605, 610 (RI 2001). Further, the Defendant must prove the existence of a causal nexus between the damages sought and the tort, looking to whether and to what extent the Plaintiff's own negligence may have contributed to her damages. *Fleet National Bank vs. Anchor Media Television, Inc.* 45 F.3d at 561.

As stated previously stated herein, the Defendant is unable to offer any expert testimony to the requisite degree of medical certainty indicating a causal connection between the lack of occupational therapy and Plaintiff's present condition. As such, the introduction of any such evidence would clearly prejudice the Plaintiff and confuse the jury on this issue. Accordingly, the evidence should be precluded pursuant to Rule 403 of the Federal Rules of Evidence.

## CONCLUSION

Based on all of the foregoing points and authorities, the Plaintiff's Motion in Limine, precluding introduction of evidence that the Plaintiff's condition worsened as a result of not going to occupational therapy during a short period of

time from November 6, 2003 to December 29, 2003 and ceasing occupational therapy as January 26, 2004, should be granted.

Plaintiff,
By and Through Her Attorney,

Thomas A. Tarro, III #2046
THE LAW FIRM OF THOMAS A. TARRO, III
The Summit East - Suite 330
300 Centerville Road
Warwick, Rhode Island 02886
(401) 737-7200
(401) 732-3362 (fax)

## CERTIFICATION

I, the undersigned, hereby certify that I mailed a copy of the foregoing ***Memorandum in Support of Motion in Limine*** on the 19th day of May, 2006, to:

David Carroll, Esq.
ROBERTS CARROLL FELDSEIN & PEIRCE
10 Weybosset Street
Providence, RI 02903