DWC:KBP/55-182
(294694) 5/22/06

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DENISE CROWE

VS. C.A. No: 05-098 T

ROBERT C. MARCHAND, M.D.

**DEFENDANT ROBERT C. MARCHAND, M.D.'S OBJECTION TO PLAINTIFF'S MOTION IN LIMINE**

Now comes, Robert C. Marchand, M.D., Defendant in the above-entitled matter, and hereby objects to Plaintiff's motion in limine.

Defendant relies on the memorandum of law attached hereto and filed herewith.

Robert C. Marchand, M.D.
By his attorney,

David W. Carroll #0561
Roberts, Carroll, Feldstein & Peirce
10 Weybosset Street
Providence, RI 02903
(401) 521-7000
Fax: (401) 521-1328

**CERTIFICATION**

I, the undersigned, hereby certify that on the 30th day of May, 2006, I mailed a true copy of the enclosed to the following:

Thomas A. Tarro, III, Esq.
300 Centerville Road
Suite 330
Warwick, RI 02886

DWC:KBP/35/182
294694

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DENISE CROWE

VS. C.A. No: 05-098 T

ROBERT C. MARCHAND, M.D.

**DEFENDANT ROBERT C. MARCHAND, M.D.'S MEMORANDUM OF LAW IN SUPPORT OF HIS OBJECTION TO PLAINTIFF'S MOTION IN LIMINE**

## I. INTRODUCTION

Now comes Defendant, Robert C. Marchand, and hereby objects to Plaintiff's motion in limine, wherein Plaintiff asked this Court to enter an Order precluding the introduction of evidence at trial that Plaintiff's injury and condition worsened as a result of her not receiving occupational therapy from November 6, 2003 through December 29, 2003 and ceasing occupational therapy as of January 26, 2004.

## II. FACTS

This is a medical malpractice action whereby Plaintiff, Denise Crowe, alleges that Defendant was negligent in the diagnosis, care, and treatment of the injury she sustained to her right wrist while rollerblading on October 20, 2002, resulting in permanent injury and disability of her wrist. After surgical repair of her wrist performed by Dr. Edward Akelman, Plaintiff underwent occupational therapy at Rhode Island Hospital from August 20, 2003 through January 2004. Plaintiff testified at her deposition of December 16, 2005 that the occupational therapy sessions reduced the pain in her wrist, reduced the swelling, and improved her ability to

move her fingers. (Crowe dep. at p. 104, 8 – p. 105, 7).[1] Plaintiff obtained a new prescription for additional therapy on November 6, 2003, but did not resume occupational therapy until December 29, 2003. (Crowe dep. at p. 108, 4-10; p. 112, 4-10).

Lynn Benavides, the Rhode Island Hospital occupational therapist who treated Plaintiff, testified that during the more than seven week break Plaintiff took from her occupational therapy between November 6, 2003 and December 29, 2003, Plaintiff's wrist flexion and wrist extension had decreased, her supination had decreased actively, and her grip strength had decreased. (Benavides dep. at p. 44, 8-p. 45, 1). Ms. Benavides testified that the decreases in motion in the Plaintiff's wrist during the time between the end of the first batch of therapy and the beginning of the second batch of therapy was related to the lack of therapy. (Benavides dep. at p. 45, 7-1). Ms. Benavides knew of no factor other than the lack of therapy during that period of time that caused a decrease in the functionality of Plaintiff's wrist. (Benavides dep. at p. 45, 12-16). Further, Ms. Benavides stressed that a consistent and high degree of effort in therapy is vitally important to obtain good results and improved motion. (Benavides dep. at p. 31, 7-22).

Despite the fact that the occupational therapy helped Plaintiff, and the previous lapse in therapy made Plaintiff's condition worse, Plaintiff canceled her occupational therapy appointment scheduled on January 30, 2004. (Crowe dep. at p. 113, 7-13). The Plaintiff never returned to occupation therapy, negatively impacting her recovery. (Crowe dep. at p. 114, 11-15).

[1] Pursuant to the Pretrial Order-Jury Case, section 5, applicable to pretrial motions before Chief Ernest C. Torres, the cites portions of the depositions are not attached as exhibits as the Defendant does not anticipate the contents of those transcripts to be disputed. To the extent that the Plaintiff disputes the cited provisions, and./or to the extent the Court requests, Defendant will submit copies of the relevant provisions of the deposition transcripts.

Plaintiff filed a motion to strike and compel answers to interrogatories, which was heard by this Court on December 16, 2006. At the hearing of December 16, 2006, which occurred prior to Ms. Crowe's deposition, this Honorable Court struck Defendant's objection to Plaintiff's interrogatory, which read as follows:

INTERROGATORY NO. 18:

Do you contend that a person, other than yourself, was responsible for the injuries sustained by the Plaintiff? If so, for each such person, state:

a. His/her name, address and job title or capacity; and
b. The facts on which you base your contention that he/she was responsible for Plaintiffs injuries.

The Court further ordered Defendant to supplement this interrogatory in accordance with the Federal Rules of Civil Procedure. The Court indicated that if Defendant failed to supplement said response, he would be precluded from introducing evidence at trial that any other person or entity was responsible for the injuries sustained by the plaintiff. Defendant was ordered to supplement answers by January 6, 2006, which he did, asserting that he was not making a contention that another person was responsible for Plaintiff's injuries.

Notably, *after* the hearing of December 16, 2006, but *before* Defendant supplemented his answers to interrogatories to Plaintiff, the depositions of Defendant's experts, Drs. Leslie and Nalebuff occurred. At each deposition, despite the fact that contributory negligence remained as a defense, Plaintiff chose not to inquire of either doctor about his opinion regarding Ms. Crowe's seven-week gap or premature termination of therapy. The deposition testimony of Ms. Crowe, Lynn Benavides and plaintiff's expert, Dr. Leo Rozmaryn, clearly indicate that Ms. Crowe's termination of her own therapy, which was assisting in her recovery, certainly contributed to the injuries for which she claims compensation.

At the April 26, 2006 hearing regarding Defendant's motion to amend his answer to include the fourth affirmative defense of doctrine of avoidable consequences or failure to mitigate damages, Defendant further sought to amend his Answer to Interrogatory No. 18 to assert "Plaintiff, herself, has contributed to the extent of her injuries due to her not continuing with occupational therapy, thereby worsening her condition." Defendant's motion with respect to amending his answer to plaintiff's complaint and his answer to interrogatory no. 18 was granted on the condition that Defendant make available Dr. Leslie and Dr. Nalebuff to Plaintiff for second deposition for limited inquiry as to whether Plaintiff's failure to continue with physical therapy contributed to her injury. As of this date, Plaintiff has not noticed a second deposition for either Dr. Leslie or Dr. Nalebuff. Further, pursuant to Plaintiff's memorandum of law filed in support of her motion in limine, she indicates that "it is not necessary to reopen the depositions of Defendant's experts…" (Pl. Mem.of Law in Support of Her Motion in Limine at p. 3, footnote 1).

At the May 2, 2006 deposition, Plaintiff's expert, Leo Rozmaryn, M.D., agreed that the condition of Ms. Crowe's wrist and "specifically her range of motion and her pain, improved" during the course of physical therapy at Rhode Island Hospital. (Rozmaryn dep. at p. 66, 6-15). Dr. Rozmaryn further agreed that it was his opinion that the occupational therapy, Ms. Crowe underwent, in and of itself, improved the condition of her wrist. (Rozmaryn dep. at 67, 10-14). Dr. Rozmaryn further agreed that it is a patient's consistent participation in modalities and therapies is what improved Ms. Crowe's condition. (Rozmaryn dep. at p. 68, 13-18). Finally, Dr. Rozmaryn, Plaintiff's expert, agreed that it is "reasonable to conclude that Ms. Crowe's failure to complete the course of therapy ordered and recommended by Dr. Akelman and his colleagues precluded her from reaching her maximum potential

improvement, at least as of January 26, 2004." (Rozmaryn dep. at 78, 13-20). Occupational therapy is intended to minimize scarring and the healing process on range of motion. (Rozmaryn, dep. at p. 195, 9-14).

## III. ARGUMENT

Defendant objects to Plaintiff's motion in limine and Plaintiff's motion should be denied because evidence that Plaintiff's condition worsened as a result of not receiving occupational therapy for seven weeks and prematurely terminating occupational therapy as of January 26, 2004 is relevant, supported by deposition testimony and necessary for the administration of justice.

### A. Evidence that Plaintiff's condition worsened as a result of her seven week gap and premature termination of occupational therapy is wholly relevant to the case at bar.

"Relevant evidence" is "evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without evidence." Fed.R.Evid.401.The basic standard of relevance under the Federal Rules of Evidence is a liberal one. Daubert v. Merrell Dow Pharmaceuticals, Inc. 509. U.S. 579, 587 (1993). Plaintiff's expert testified at deposition that failure to complete the course of therapy as ordered and recommended precluded Ms. Crowe from attaining maximum potential improvement. (Rozmaryn dep. at 78, 13-20). Clearly, evidence as to her unexplained gap in therapy and premature, unilateral termination together with Ms. Crowe's admission that therapy helped her, clearly tend to make it more likely that Ms. Crowe's condition would have improved had she followed the prescribed treatment plan. Hence, any such evidence, in light of the liberal standard applied by the Federal Rules of Evidence, is relevant and should be admitted.

In the case at bar, the facts set herein support the affirmative defense of the doctrine of avoidable consequences or the failure of Plaintiff to mitigate her damages. "The affirmative defense of mitigation of damages is often referred to as the 'doctrine of avoidable consequences.' The law in Rhode Island is well settled that a party claiming injury 'has a duty to exercise reasonable diligence and ordinary care in attempting to minimize its damages." McFarland v. Brier, 769 A.2d 605, 610 (R.I. 2001) (quoting Tomaino v. Concord Oil of Newport, Inc., 709 A.2d 1016, 1026 (R.I. 1998). The doctrine applies to "a party claiming injury that is due to breach of contract or tort[.]" Tomaino, 709 A.2d at 1026 (emphasis added). "This rule prevents the injured party from sitting silent while the damages accumulate." Id. The doctrine "requires a plaintiff to take all reasonable steps to mitigate damages *after* he or she has been tortiously injured. The classic example is, of course, the failure or refusal of a victim to seek or submit to medical attention after wrongfully harmed by a defendant." Swajian v. General Motors Corp., 559 A.2d 1041, 1046 (R.I. 1989) (emphasis added and in original). By failing to participate in her scheduled and prescribed occupational therapy, when the therapy was helping her wrist to heal, the Plaintiff failed to mitigate her damages and, in fact, aggravated her alleged injuries.

In addition to the testimony of Lynn Benavides, Plaintiff's therapist, Plaintiff's expert, agreed that it is "reasonable to conclude that Ms. Crowe's failure to complete the course of therapy ordered and recommended by Dr. Akelman and his colleagues precluded her from reaching her maximum potential improvement, at least as of January 26, 2004." (Rozmaryn dep. at 78, 13-20). Ms. Crowe testified that she has not undergone any additional therapy since January 26, 2004. Hence, Ms. Crowe's failure to complete her prescribed therapy precluded from attaining her maximum medical result.

Defendant is required to prove the affirmative defenses asserted, through expert testimony or *other relevant evidence*. See Owens v. Silvia, 838 A.2d 881, 903 (R.I. 2003) (specifically addressing assumption of the risk.). Although, some of the defenses raised by Defendant were not expressly addressed by Defendant's experts, Defendant is not barred from introducing evidence from other sources, namely Plaintiff herself, Plaintiff's occupational and physical therapists and Plaintiff's disclosed expert to offer evidence regarding said defenses.

The facts set forth herein support Defendant's claim that Plaintiff was contributorily negligent. "In all actions hereafter brought for personal injuries…the fact that the person injured… may not have been in the exercise of due care shall not bar a recovery, but damages shall be diminished by the finder of facts in proportion to the amount of negligence attributable to the person injured[.]" R.I.G.L. §9-20-4. Contributory or comparative negligence "comes into play only after negligence is first established on the part of both the plaintiff and the defendant. Once that is established, the plaintiff's damages 'shall be diminished by the finder of fact in proportion to the amount of negligence attributable' to the plaintiff." Calise v. Hidden Valley Condominium Association, Inc., 773 A.2d 834, 837 (R.I. 2001). By taking more than seven weeks off from her therapy and then failing to continue and complete her occupational therapy treatments, the Plaintiff negligently worsened her condition and increased damages that would not have arisen had she continued with the prescribed occupational therapy. Notably, the Plaintiff knew that the occupational therapy helped her condition and, despite this, unilaterally canceled future appointments and quit the therapy.

Evidence regarding Plaintiff's gap in treatment and premature termination of occupational therapy is certainly relevant and should Defendant be prohibited from presenting such evidence, he would certainly be unfairly prejudiced.

**B. Defendant's expert disclosure provides that Defendant's experts may address the impact of Plaintiff's treatment and therapy on her alleged residual disability.**

In Defendant's expert disclosure, Defendant expressly stated that both Dr. Leslie and Dr. Nalebuff will "address opinions expressed by the plaintiff's experts in discovery and at trial, and on the nature and substance of the medical examinations and treatment Denise Crowe received." Additionally, Defendant expressly stated in his second supplemental answers to interrogatories that Drs. Leslie, Nalebuff and Marchand "may also indicate that any residual disability Plaintiff has could have been relieved or reduced had Plaintiff continued with her physical therapy and/or received additional treatment." Finally, Defendant's expert disclosure also provided that Defendant's experts will address the opinions of plaintiff's expert obtained through discovery and at trial. Dr. Rozmaryn offered opinions at a discovery deposition, which occurred more than 6 weeks after discovery closed, regarding the discontinuation of a recommended treatment program and its impact on maximum medical improvement. Such opinions are certainly within the purview and scope of that which can be addressed by Defendant's experts. Hence, Plaintiff has been on notice that Defendant's experts will address Plaintiff's treatment and its impact on Plaintiff's alleged disability.

**C. The probative value of Plaintiff not receiving therapy for seven weeks and prematurely terminating her prescribed course of therapy outweighs any prejudice to Plaintiff.**

Plaintiff's condition before the seven-week gap in treatment and after the seven-week gap in treatment and her failure to follow her prescribed course of treatment are factual inquiries that certainly should be permitted. Pursuant to Fleet National Bank vs. Anchor Media Television, Inc. 45 F.3d 546, 561 (1st Cir. 1995),

> The doctrine of mitigation of damages imposes on a party injured by either a breach of contract or a tort the duty to exercise reasonable diligence and ordinary care in attempting to minimize its damages. Black's Law Dictionary 1002 (6th ed. 1990). The doctrine thus *presupposes,* as a threshold matter, the existence of a causal nexus between the damages sought and the breach or tort, looking at whether and to what extent an intervening cause (i.e., a plaintiff's own negligence) may have contributed to these damages.

In Fleet National Bank the dispute stemmed from a contract for sale. The court further clarified that the question is not whether and to what extent claimant's own conduct contributed to its damages; the threshold question, is, rather, of whether the damages claimant sought were caused by the conduct of which complaint complained. See Fleet National Bank at 561. Hence, the relevant and threshold inquiry is whether all of the damages sought by Plaintiff were caused by Dr. Marchand's alleged medical malpractice. Plaintiff's own expert asserted that failure to complete a prescribed treatment plan precludes a patient from attaining his/her maximum medical result. Although the exact percentage of Plaintiff's failure to complete her treatment has not been identified, it cannot be overlooked that Plaintiff's own conduct precluded her from attaining her maximum medical improvement.

## III. CONCLUSION

For the reasons set forth above, this Court should deny Plaintiff's motion in limine and permit, Defendant and Defendant's experts to introduce evidence regarding Plaintiff's gap in therapy and premature termination of her occupational therapy and the affect thereof on her alleged disability.

Robert C. Marchand, M.D.
By his attorney,

David W. Carroll #0561
Roberts, Carroll, Feldstein & Peirce
10 Weybosset Street
Providence, RI 02903
(401) 521-7000
Fax: (401) 521-1328

**CERTIFICATION**

I, the undersigned, hereby certify that on the 30th day of May, 2006, I mailed a true copy of the enclosed to the following:

Thomas A. Tarro, III, Esq.
300 Centerville Road
Suite 330
Warwick, RI 02886