UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DENISE CROWE :
:
VS. : C.A. No. 05-098T
:
ROBERT C. MARCHAND, MD; :
SOUTH COUNTY ORTHOPEDIC & :
PHYSICAL THERAPY, INC. :

**OBJECTION TO MOTION IN LIMINE**
**FILED BY DEFENDANT ROBERT C. MARCHAND, M.D.**

Now comes the Plaintiff in the above entitled matter and objects to the Motion in Limine filed by Defendant Robert C. Marchand on the grounds that the medical opinion of Dr. Leo Rozmaryn has been stated with the requisite degree of specificity to be admissible under the Federal Rules of Evidence.

In support of her Objection, Plaintiff relies on the accompanying memorandum of law and exhibits attached thereto.

Plaintiff,
By and Through Her Attorney,

Thomas A. Tarro, III #2046
LAW FIRM OF THOMAS A. TARRO, III
The Summit East - Suite 330
300 Centerville Road
Warwick, RI 02886
(401) 737-7200
(401) 732-3362 (fax)

**CERTIFICATION**

I, the undersigned, hereby certify that I have sent a copy of the foregoing Objection to Motion in Limine Filed by Defendant Robert C. Marchand, M.D. on the 1st day of June, 2006, to:

David Carroll,Esq.
Roberts Carroll Feldstein & Peirce
Ten Weybosset Street
Providence, RI 02903

Ashley Torreatto

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DENISE CROWE | : | |
| | : | |
| VS. | : | C.A. No. 05-098T |
| | : | |
| ROBERT C. MARCHAND, MD; SOUTH COUNTY ORTHOPEDIC & PHYSICAL THERAPY, INC. | : | |

## MEMORANDUM IN SUPPORT OF OBJECTION TO MOTION IN LIMINE FILED BY DEFENDANT ROBERT C. MARCHAND

Now comes the Plaintiff in the above entitled matter and objects to the Motion in Limine filed by Defendant Robert C. Marchand on the grounds that the medical opinion of Dr. Leo Rozmaryn has been stated with the requisite degree of specificity to be admissible under the Federal Rules of Evidence.

## FACTS

Plaintiff has retained Leo Rozmaryn M.D., a board certified orthopedic surgeon, as a medical expert who will testify at trial concerning the medical care and attention provided to the Plaintiff by Dr. Marchand. His opinions are set forth in the Rule 26 expert disclosure (Exhibit 1) and are based upon a reasonable degree of medical certainty and his review of the medical records and his independent medical examination of the Plaintiff. The Doctor's opinion as to permanent injury is as follows:

1. The MRI of 11/12/02 shows evidence of tear of triangular fibrocartilage.

2. The appropriate course of treatment on 10/21/02 and no later than 11/14/02 would have been operative repair of the fracture and scafullnate ligament and possibly the triangular fibrocartilage.

3. On 11/14/02, Dr. Marchand prescribed a conservative course of treatment consisting of wrist splint, physical therapy and medication.

4. The course of treatment prescribed by Dr. Marchand was a deviation from acceptable medical care provided by orthopedic specialists for the following reasons:

   a) Operative treatment was required to achieve a normal result.

   b) A delayed surgery resulted in a salvage type of operation, the consequence of which were greater loss of mobility and flexion in the patient's wrist and far greater likelihood of post-surgical pain.

5. If the surgery had been performed on in October 2002, the objective was to achieve normal functioning of the right wrist.

6. The deviation in the standard of care by Dr. Marchand resulted in a more extensive surgery consisting of a fusion, which resulted in a 50 percent loss of mobility (flexion/extension/movement) of the right wrist.

7. The fusion increased the patients impairment and future disability and could have been avoided if surgery was performed in October 2002.

On May 1, 2006, Dr. Rozmaryn had the opportunity to examine the Plaintiff in order to assess her current level of disability. Dr. Rozmaryn testified that his examination and discussions with the Plaintiff did not alter his opinions regarding the standard of care applicable in this case. (Deposition p. 63).

On May 2, 2006, Dr. Rozmaryn's deposition was conducted. When questioned about his conclusion as to disability as set forth in his May 1, 2006 report Dr. Rozmaryn testified at pages 57 to 61 of his deposition as follows:

57

Q Now, Doctor, your ultimate conclusion on
Page 6 of this document is that you believe, quote:
She has a disability in her wrist of about 15 percent
of her right side.
A For her right side.

Q I'm sorry, thank you. For her right side, based on pain with extreme of -- extremes of movement or heavy use and stiffness from the scaphocapitate fusion. Did I read that correctly?
A Yes.
Q Are you saying that her wrist, itself, is disabled by 15 percent?



A These are ratings -- I basically -- I didn't do a formal disability rating.
Q Okay.
A But I know, generally speaking, what the AMA Guidelines for disability ratings are and, so, this was a best guesstimate within the ballpark of what her disability is.
There are several criteria. There is pain, stiffness, loss of movement of wrist and fingers specifically, deformity. Those are the kinds of things that go into the calculus to determine how something is disabled.
And what that means is that I think that there is a 15 percent disability -- disability ratings are based on, like, right arm, et cetera. So, because of the wrist, the 15 percent disability of her right arm and that's about a one or two percent disability of her whole body.
These are the types of jargon that are used by those who rate disabilities set forth by the AMA disability rating book.



Q Okay. You mentioned that you did not do a formal disability rating and you mentioned once or twice now the AMA disability book.
A Yes.
Q You're aware that the AMA puts out a textbook --
A That's the one I'm talking about.
Q And that textbook actually has specific categories of information that are to be measured and considered, right?
A Yes.

Q And then there are mathematical formulas into which you input those categories of information to come out with a disability rating, right?
A Yes.
Q And you didn't do any of that mathematical analysis here, correct?
A That's correct. That's why I said about 15 percent.
Q Okay. Would you -- you just a moment ago ticked off these categories of information that need to



be measured. And we can go through them, again, if you like and I just don't want to spend time unnecessarily.
Have you told us all the ones that you remember --
A Yes.
Q -- the AMA Guides states must be considered in order to perform the type of disability rating that you did here?
A Yes.
Q Okay. If you left one out --
A Strength.
Q Okay.
A That was the one I left out.
Q Okay. Have you now told me all of the categories of information that you understand the AMA Guidelines require to be --
A Yes.
Q -- assessed?
A Yes, I believe so, now.
Q Would you agree with me that if, for some reason, you have left one out, it's not part of your



analysis, then your ultimate disability rating would not be reliable?
A As I said, this is a ballpark figure. I may be off by five percent, but I don't think I'm off by more than that. This is a plus/minus five percent.
It is a simple matter to send her to a therapist to get a formal disability rating and in my practice, if somebody actually needs a formal

> disability rating, I send the patient over to my hand therapist. That was not part of this mandate.
>
> I couldn't then, during the IME or after the IME say, well, listen, I want you to go over to my therapist, he'll do the exact rating and it will take two days to get the rating back because he has to sit there and plug in the numbers and it was not a practical thing to do.
>
> So, because of that, I felt I needed to include some ballpark estimate of what I believe based on my best guess and how these numbers generally crunch out. That's how I got to 15 percent.

From this testimony it is clear that although Dr. Rozmaryn did not conduct a mathematical calculation based upon the AMA guidelines, he evaluated the Plaintiff and her current medical condition, assessed the same factors as recommended under the AMA guidelines and determined within a reasonable degree of medical certainty, with a plus or minus of five (5) percent differential, that she was fifteen (15) percent disabled as a result of her medical condition. This testimony comports with the standards required under the Federal Rules of Evidence and accordingly should not be excluded by this Court.

## STANDARD OF REVIEW

The admissibility of opinion evidence by experts is a matter within the discretion of the trial court. *Newell Puerto Rico, Ltd. v. Rubbermaid, Inc.*, 20 F. 3d 15, 20 (1st Cir. 1994). The First Circuit has expressly stated, "The fact that an expert's testimony may be tentative or even speculative does not mean that the testimony must be excluded so long as opposing counsel has an opportunity to attack the expert's credibility." *Id* at 21. The strength or weakness of the factual underpinnings of an expert's opinion affects its

weight and credibility which is a question to be resolved by the jury. *Id. See also Wallace v. United States*, 335 F.Supp. 2d 252, 262 (D.R.I. 2004) (weight of expert testimony must be left to the fact finder). *See also Owens v. Silvia*, 838 A.2d 881 (R.I. 2003) (in deciding whether to admit proffered expert testimony, the trial justice must take care not to interfere with the jury's role as the trier of fact). Moreover, a trial court may not remove relevant evidence from the jury's consideration in the context of a motion in limine on the grounds that he finds the evidence unpersuasive. *Blake v. Pellegrino*, 329 F. 3d 43 (1st Cir. 2003) (remanding case for new trial where district court improperly granted motion in limine to remove cause of death from patient's death certificate).

## <u>ARGUMENT</u>

### I. Dr. Rozmaryn's Testimony is Admissible Under Rule 702 of the Federal Rules of Evidence.

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Here, there can be no dispute that Dr. Rozmaryn was qualified to testify as an expert under Rule 702 of the Rules of Evidence based upon his education, training and experience. Likewise, Dr. Rozmaryn has set forth the facts and data in support of his opinion. Thus, the only question before this court is whether Dr. Rozmaryn's opinion

regarding the extent of the Plaintiff's disability was rendered with sufficient certitude to be admissible under the precedents established by this Court.

In this regard, the First Circuit has stressed that the precise words used by an expert in setting forth his medical opinion are not determinative, so long as his conclusions are expressed in terms of reasonable probabilities, based on his expertise as applied to the facts available to him. *DaSilva v. American Brands, Inc.*, 845 F. 2d 356, 361 (1st Cir. 1988). In *DaSilva*, the Defendant argued that the testimony of the Plaintiff's medical expert should have been excluded because his use of the words "my belief" and "could have" amounted to impermissible speculation. The court disagreed, ruling that, "While at times he did not choose the precisely proper wording for his responses, those responses generally reflected a conclusion based on a reasonable degree of medical certainty." *Id.*

This analysis is consistent with the precedents of the Rhode Island Supreme Court which reflect a clear intention simply to insure that the expert's opinion rests upon the requisite level of certitude as opposed to mere speculation. As stated in *State v. Lima*, 546 A.2d 770 (R.I. 1988):

> This court has long held that we require that expert testimony speak in terms of strong probability, not mere possibility. *State v. Adams*, 481 A.2d 718, 727 (R.I. 1984). Adams does not require of the expert the use of the talismanic phrase "strong probability." The expert must merely testify to the effect that he reached his conclusion with reasonable medical certainty.

*Id.* at 773. In *Sweet v. Hemingway Transport, Inc.*, 114 R.I. 348, 333 A.2d 411 (R.I. 1975), the Court utilized the phrase that the testimony of a medical expert "must speak in

terms of probabilities rather than possibilities." *Id* at 355. However, the Court went on to explain the purpose behind the phrase was to insure that expert testimony be stated "with some degree of positiveness that a given state of affairs is the result of a given cause." Id. Thus, this court must look at the testimony in its entirety to determine whether the *Sweet* standard has been met.

A trial judge should not apply a narrow and stringent interpretation of the rules of evidence by applying overly rigid and technical standard for the admissibility of an expert's opinion. *Gallucci v. Humbryd*, 709 A.2d 1059, 1064 (R.I. 1998). In *Gallucci*, the Rhode Island Supreme Court once again rejected the notion that there existed any "magic words" required to present expert testimony:

> Trial advocacy, although undoubtedly an ancient art, is not alchemy. There are no magic words. We reject the notion that lawyers and their expert witnesses must recite precisely constructed talismanic incantations. Nor must they rigidly conform their words to those of prior successful witnesses in order to present expert opinions as evidence.

*Id* at 1066.

Thus, the touchstone of this Court's analysis of the admissibility of the expert's testimony in this case must be whether the expert offered his opinions with the requisite degree of positiveness and certainty, regardless of whether or not specific words were used. *Morra v. Harrop*, 791 A. 2d 472 (R.I. 2002). If the expert has testified with "some degree of positiveness," his or her testimony is admissible and issues relative to the weight of the evidence are left to the fact-finder." *Id* at 477.

Dr. Rozmaryn's anticipated trial testimony clearly falls within the parameters of Rule 702. Certainly his use of the word guesstimation is a poor choice of words.

Nonetheless his estimate of disability is based upon his training, knowledge and experience. Moreover, because he unequivocally stated his conclusion was accurate to plus or minus five percent, it has the requisite certainty to be admissible. His testimony was not based upon mere speculation and is clearly admissible under Rule 702. Furthermore, Defendant has cited to no case law which requires a doctor's disability rating to be based exclusively on the AMA Guidelines. If such guidelines were used one could argue that his testimony should be given more weight. On the other hand, the decision not to utilize the AMA guidelines does not make the testimony inadmissible, but simply goes to weight and credibility which are matters for the jury.

## II. Dr. Rozmaryn's Testimony Is Admissible Pursuant to Rule 403 of the Federal Rules of Civil Procedure Because the Probative Value of the Evidence Exceeds Any Alleged Prejudice.

The district court has broad discretion to decide whether relevant evidence should be excluded under Rule 403. *Newell Puerto Rico, Ltd. v. Rubbermaid, Inc.*, 20 F. 3d at 21. As a threshold matter, Dr. Rozmaryn's testimony regarding the extent of the Plaintiff's disability is unquestionably relevant to the issue of damages. The fact that Dr. Rozmaryn may have characterized his disability determination as having no "major relevance," presumably referring to its impact on his opinion regarding the standard of care, does not equate to a finding that his testimony was irrelevant under the Federal Rules of Evidence. To the contrary, evidence regarding the extent of Plaintiff's disability has a "tendency to make the existence of a fact [Plaintiff's damages] that is of

consequence to the action more probable or less probable than it would be without the evidence." Rule 401.

Defendant's contention that the prejudicial effect of this testimony warrants its exclusion under Federal Rule of Evidence 403 is without merit. The relevant inquiry is whether the probative value is "substantially outweighed by the unfair prejudice." *Swajian v. General Motors Corp.*, 916 F.2d 31 (1st Cir. 1990). In this regard, the First Circuit has iterated:

> We will not paint the lily. All evidence is meant to be prejudicial; elsewise, the proponent would be unlikely to offer it. It is a necessary corollary of this conventional wisdom that evidence cannot be kept from the jury merely because it hurts a party's chances. The element that triggers a need to exclude evidence under Rule 403 is not prejudice, but unfair prejudice. No such unfairness lurks in this record.

*Daigle v. Maine Medical Center, Inc.*, 14 F.3d 684, 690-691 (1st Cir. 1994) (citations omitted); *See also Espeaignnette v. Gene Tierney Company, Inc.*, 43 F.3d 1 (1st Cir. 1994) (stressing the importance of gauging the probative value of testimony and not overestimating the danger of unfair prejudice). Here, the substantial probative value of the testimony far outweighs any minimal prejudice. Moreover, any alleged prejudice cannot be characterized as unfair, as the Defendant will have the opportunity to address the issues raised in his motion in limine in the context of his cross examination of Dr. Rozmaryn and in the context of his own expert's testimony.

## CONCLUSION

For the reasons set forth herein Plaintiff requests that the defendant's Motion in Limine be denied in all respects.

Plaintiff,
By and Through Her Attorney,

Thomas A. Tarro, III #2046
LAW FIRM OF THOMAS A. TARRO, III
The Summit East - Suite 330
300 Centerville Road
Warwick, RI 02886
(401) 737-7200
(401) 732-3362 (fax)

## CERTIFICATION

I, the undersigned, hereby certify that I have sent a copy of the foregoing Memeorandum in Support of Objection to Motion in Limine Filed by Defendant Robert C. Marchand, M.D. on the 1st day of June, 2006, to:

David Carroll,Esq.
Roberts Carroll Feldstein & Peirce
Ten Weybosset Street
Providence, RI 02903