35-182/312156

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DENISE CROWE

VS. C.A. No: 05-098 T

ROBERT C. MARCHAND, M.D.

**DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION FOR NEW TRIAL**

Now comes the defendant, Robert C. Marchand, M.D., and hereby objects to Plaintiff's motion, pursuant to Rule 59 of the Federal Rules for Civil Procedure, for a new trial. Defendant relies upon the memorandum and exhibits appended hereto in support of his objection.

ROBERT C. MARCHAND, M.D.
By His Attorneys,

/s/ David W. Carroll
/s/ Jason C. Preciphs
David W. Carroll #0561
Jason C. Preciphs #6727
ROBERTS, CARROLL, FELDSTEIN & PEIRCE INC.
Ten Weybosset Street, 8th Floor
Providence, RI 02903
401-521-7000; (401) 521-1328 (fax)
dcarroll@rcfp.com; jpreciphs@rcfp.com

**LR Cv 7(e) STATEMENT**

Pursuant to LR Cv7(e), Defendant requests oral argument on Plaintiff's Rule 59 motion and Defendant's Objection thereto. Defendant estimates that fifteen (15) minutes will be required.

**CERTIFICATION**

I hereby certify that on this 16th day of January, 2007 the within document was filed electronically through the ECF System, where it is available for viewing and downloading by the following registered participant(s):

Thomas A. Tarro, III, Esq.
Kris Macaruso Marotti , Esq.
The Summit East – Suite 330
300 Centerville Road
Warwick, RI 02886
ttarro3rd@tarrolawfirm.com
kmarotti@tarrolawfirm.com

/s/ Jason C. Preciphs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DENISE CROWE

VS. C.A. No: 05-098 T

ROBERT C. MARCHAND, M.D.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION FOR NEW TRIAL**

Now comes the defendant, Robert C. Marchand, M.D., and hereby submits this memorandum in support of his Objection to Plaintiff's motion, pursuant to Fed. R. Civ. P. 59, for a new trial. Defendant relies upon the memorandum and exhibits appended hereto in support of his objection. As set forth herein, the Honorable Court should deny Plaintiff's motion as: (1) Dr. Bruce Leslie's testimony was based upon sufficient facts and data and; (2) Defendant's expert, Dr. Leslie, was properly permitted to offer opinions concerning the plaintiff's prognosis and condition as said opinions were properly disclosed and adequately supported.

**STANDARD OF REVIEW**

This matter is before the Honorable Court on Plaintiff's Motion for New Trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. Rule 59(a) of the Federal Rules of Civil Procedure provides in pertinent part:

> A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States…. Fed. R. Civ. P. 59(a).

To begin with, it is well-settled that a federal district court may set aside a jury's verdict and grant a new trial *only if* the verdict is against the clear or demonstrable weight of the credible evidence or results in a manifest miscarriage of justice. *Bogosian v. Mercedes-Benz of N. Am., Inc.*, 104 F.3d 472, 482 (1st Cir. 1997); *Ahern v. Scholz*, 85 F.3d 774, 780 (1st Cir. 1996); *Lama*

*v. Borras*, 16 F.3d 473, 477 (1st Cir. 1994). "The decision whether to grant a motion for a new trial is committed to the discretion of the district court ." *Parker v. Town of Swansea*, 310 F.Supp.2d 356, 370 (D.Mass. 2004) (citation omitted).

"The standard for a new trial motion is also a difficult one to meet." *Fleet Nat. Bank v. Anchor Media Television, Inc.*, 831 F.Supp. 16, 32 (D.R.I. 1993). Under Rule 59, the burden is on the moving party to show that "the court committed error and that the error rendered the trial unfair." *Id*. at 370 (*quoting MacNeill Eng'g Co. v. Trisport, Ltd.*, 126 F.Supp.2d 51, 64 (D.Mass. 2001)) (internal quotation marks omitted).

Here, Plaintiff asserts that she is entitled to have the jury's verdict set aside and to receive a new trial based upon alleged errors made by the Court in permitting Defendant's expert witness to testify. Under the Federal Rules of Evidence, expert testimony is governed by Rule 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed.R.Evid. 702.

Thus, when faced with a proffer of expert testimony, the district court must determine whether the expert witness is qualified and has specialized knowledge that will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702; *see generally United States v. Sepulveda*, 15 F.3d 1161, 1183 (1st Cir.1993)(citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993)), *cert. denied*, 512 U.S. 1223, 114 S.Ct. 2714, 129 L.Ed.2d 840 (1994). "Because gauging an expert witness's usefulness is almost always a case-specific inquiry, the law affords trial judges

substantial discretion in connection with the admission or exclusion of opinion evidence." *Sepulveda*, 15 F.3d at 1183.

In its consideration of a Rule 59 motion, the Court may make its own assessment of the credibility of the witnesses and the weight of the evidence. *See* 9A Wright & Miller, *Federal Practice and Procedure* § 2531 (2d ed. 1994) ("On a motion for new trial the court may consider the credibility of witnesses and the weight of the evidence.").

While not allowed to speculate, the fact-finder is of course free to find some experts more credible than others. *See, e.g., Waffen v. United States Dep't of Health & Human Servs.,* 799 F.2d 911, 921 (4th Cir. 1986) (applying Maryland law; noting that the fact-finder in a medical malpractice case is entitled to decide the weight and credibility of expert testimony); *Rosario v. United States*, 824 F.Supp. 268, 279 (D.Mass. 1993) (applying Massachusetts law to reach similar determination).

**ARGUMENT**

Plaintiff bases her request for a new trial upon two assertions. First, Plaintiff asserts that this Court erred in permitting the defendant's expert, Dr. Bruce Leslie, to offer *any* expert testimony on the basis that Dr. Leslie formed his opinions based upon radiographic reports rather than underlying images/films. Second, Plaintiff argues that Dr. Leslie was erroneously permitted to testify regarding the plaintiff's prognosis and condition. As to this second assertion, Plaintiff alleges that said testimony was speculative and the content of same was not appropriately disclosed pursuant to Rule 26. However, all of Plaintiff's assertions fail and, consequently, her motion should be denied. First, Dr. Leslie was properly permitted to offer opinions concerning the plaintiff's prognosis and condition as said opinions were properly disclosed and adequately supported. Second, the defendant's expert testimony was based upon sufficient facts and data as

Plaintiff has not shown any basis for asserting that reliance on the reports renders the opinions ill-founded..

**I. Plaintiff waived any objection as to lack of disclosure as to Dr. Leslie's testimony regarding the plaintiff's prognosis had surgery been performed earlier and regarding the cause of her pain.**

It is well settled that, "[A] party who fails to object to errors at trial waives the right to complain about them following trial." *Waldorf v. Shuta,* 142 F.3d 601, 629 (3rd Cir. 1998); *see also Boston Scientific Scimed, Inc. v. Cordis Corp.,* 434 F.Supp.2d 308, 318 (D.Del. 2006)("a party may not seek a new trial on the basis of objections not raised in the original trial.")(*citing Motorola, Inc. v. Interdigital Tech. Corp.,* 121 F.3d 1461, 1469 (Fed. Cir. 1997); *Caisson Corp. v. Ingersoll-Rand Co.,* 622 F.2d 672, 681 (3rd. Cir. 1980); *Finch v. Hercules Inc.,* 941 F.Supp. 1395, 1416 (D.Del. 1996)). Here, a review of the testimony and the plaintiff's *objections thereto* reveals that she never objected to this supposed "speculative testimony" on the basis of inadequate disclosure. Therefore, Plaintiff waived this argument and the Court should reject Plaintiff's attempt to raise it, for the first time, in her Rule 59 motion. Moreover, even had such objection been raised, the testimony at issue was fully and adequately disclosed in Defendant's expert disclosure, Dr. Leslie's December 15, 2005 report, and in Plaintiff's October 29, 2005 discovery deposition of the witness.

Notably, in her memorandum, Plaintiff recites a lengthy portion of Dr. Leslie's testimony and alleges that the defendant's expert was erroneously permitted, "despite the fact that it was not disclosed in his expert report . . . to offer speculative testimony as to what Plaintiff's present condition would be, if surgery was performed on November 14, 2002 or shortly thereafter, as well as the cause of Plaintiff's pain…." (Plf's Mem. at 4.) Yet, a review of the testimony at issue reveals that Plaintiff's memorandum omits the specific objections she raised at trial that clearly failed to mention the issue of disclosure.

With respect to the testimony at issue, Dr. Leslie testified as follows:

Q. Doctor, let's assume that Dr. Marchand had operated on the patient to address the issue of the ligament –

A. Yes.

Q. -- shortly after her visit of November 14, 2002, with Dr. Marchand. If we make that assumption that he had addressed that in an operative procedure at that time, do you have an opinion as to whether her hand would be better or worse that it is today?

MR. TARRO: Objection.

THE COURT: Same ground?

MR. TARRO: **There's a couple of grounds, Your Honor. One is a foundation with regard to the type of surgery that would have been performed. I don't believe he has any knowledge what Dr. Marchand was indicating because it's not set forth in the medical record, in terms of the type of surgical procedure.**

THE COURT: All right. What's the second ground?

MR. TARRO: **And the second ground was pure speculation, Your Honor.**

THE COURT: Overruled. Do you remember the question, Doctor.

THE WITNESS: I know where we are going here…. The answer to your question is: If Dr. Marchand had done some surgery to repair the ligament at about four to six weeks after the injury, when she was in the process of developing a dystrophy, I would be very, very, very concerned that, after that surgery—and understand she would be in a cast for two to three months, so here we have a woman who's not moving that well – at the end of two to three months, that hand would be very stiff and not that functional.

The second part of your question was, in regards to Dr. Akelman's surgery, it would be worse if he had operated in it then than she is now.

Q. Doctor, looking at the period from November 14th, which was three or weeks following the injury of October 20th –

A. Yes, sir.

Q. Okay. – up until the time when Dr. Akelman operated, that would be in May of the following year, have you read the records in regard to any discomfort the patient was experiencing during that period of time?

A. Yes, I did.

Q. Do you have an opinion as to the cause of the discomfort she was experiencing during the period of time from November 14th till May 13th of the following year?

MR. TARRO: Objection.
THE COURT: Same grounds?
MR. TARRO: **Same grounds, Your Honor.**
THE COURT: Overruled. You may answer.

* * *

Q. Do you have an opinion, Doctor, as to whether the discomfort she was experiencing that you've read about in the records, without telling us what your opinion is, do you have an opinion as to whether it related to the RSD, in whole or in part, or the ligament tear?

MR. TARRO: Objection.
THE COURT: Overruled. You may answer that yes or no, Doctor.

A. Yes, I have an opinion.

Q. Okay. Without telling us your opinion, could you tell us the factual foundation of your opinion?

MR. TARRO: Objection.
THE COURT: Overruled. You may answer.
(12/14/06 Tr. at 19-22.)

As clearly set forth in the testimony at issue, quoted above *with* the relevant series of objections, Plaintiff did not assert, as a basis for objection, any argument regarding lack of disclosure during the pertinent testimony. Rather, Plaintiff's memorandum in support of her Rule 59 motion quotes this testimony while omitting the pertinent "couple of grounds" for the two objections at issue. Plaintiff never raised, as the basis for any objection to the testimony at issue, a lack of disclosure. This objection was, therefore, waived.

Nevertheless, had a timely objection on the issue of disclosure been raised, such objection should properly have been denied. As Defendant's October 1, 2005 expert disclosure, a copy of which is appended hereto as Exhibit A, indicates:

> Dr. Leslie [was expected to] testify regarding the standard of care with respect to surgically treating a scapholunate disassociation with respect to timing and options, and the risks and benefits of each…. [Furthermore] Dr. Leslie is expected [to] testify on the injuries Ms. Crowe sustained to her right wrist and on

> the issue of causation. Dr. Leslie will testify concerning the patient's prior and subsequent ranges of motion of her right wrist in relation to the injury, physical therapy and surgical procedures. (Def's expert Disclosure at 2-3., Ex. A)

Thereafter, in his December 14, 2005, report, Dr. Leslie very clearly articulates:

> While ligamentous repair within three to six weeks of scapholunate ligament injury is frequently performed, repair up to four or six months can be carried out as long as there is not a fixed deformity…. Mrs. Crowe did not have a fixed carpal deformity.
>
> *If Dr. Marchand had either performed a scapholunate ligament repair or pushed Ms. Crowe to have a scapholunate ligament repair, given the amount of stiffness and swelling the therapist noted, it is, more likely than not, based on a reasonable degree of medical certainty, that Ms. Crowe would either have had an exacerbation of her reflex sympathetic dystrophy and/or marked wrist stiffness.* **In other words, earlier surgery would not have given Ms. Crowe a better result.** If anything, the developing reflex sympathetic dystrophy may have given her a worse result. (Report of Dr. Leslie, Ex. B, at 6)(emphasis added and in original).

Finally, during Plaintiff's December 29, 2005 deposition of Dr. Leslie, pertinent portions of which are attached hereto as Exhibit C, the following testimony was elicited regarding the cause of Ms. Crowe's pain after her injury:

> Q: What symptoms are necessary for this clinical diagnosis [of RSD]?
>
> A: The key symptom is going to be a patient that's not following the usual expected course, be it after an operation, or in this case after an injury. So, when you have someone with a Colles' fracture with or without a ligament tear, what you're going to start seeing in somebody who has an RSD, God Forbid, is pain that is out of proportion. You expect pain to be diminishing over the first – certainly by the second week. . . . If things are going the opposite way, in other words pain is being maintained…. (Leslie Dep. at 46.)
>
> * * *
>
> Q: It's an assumption that you're making that [Dr. Marchand] was concerned that she wasn't improving and therefore was developing some sort of RSD like symptoms?
>
> A: It's a fairly good assumption the way they're describing it.
>
> Q: Is that an assumption on your part?

> A: Probably not, actually. The purpose of medical records is to convey a clinical picture. And when you look at the records here, on December 26th he's saying that she has considerable pain. Two months after a fracture considerable pain, that's like a flashing neon light. . . . (Leslie Dep. at 51.)

Despite the foregoing evidence brought to light during expert discovery, Plaintiff asserts in the motion at bar that, "the opinions concerning the condition of the Plaintiff's fracture, if surgery had been performed sooner, and the cause of the Plaintiff's pain and suffering was not properly disclosed in Dr. Leslie's expert report of December 14, 200[5], nor in his deposition of (sic) the Defendant's Answer to the Expert Interrogatory."

Based upon the foregoing, Plaintiff's assertion in this regard should be rejected. Certainly, therefore, no manifest unfairness occurred during trial with respect to this issue.

## II. Plaintiff has not articulated any basis for her argument that a review of the radiographic images that underlie the reports relied upon by Dr. Leslie was necessary for the doctor to offer his opinions.

Immediately prior to his trial testimony on December 14, 2006, Plaintiff objected to testimony as to "whether or not Dr. Marchand adhered to the standard of care in this case on the basis that he did not review any radiological films." (12/14/06 Sidebar Discussion Tr. at 1.) Dr. Leslie, admittedly, relied upon radiology *reports* relative to the images in formulating the opinions articulated in his report of December 15, 2005 and elicited at trial before the jury. The Court denied Plaintiff's oral motion to preclude Dr. Leslie's testimony, stating, in part, that it was "too late to raise that question…." *Id.* at 2. The doctor proceeded to testify before the jury in accordance with his expert disclosure and the report of December 15, 2005.

Here, pursuant to Rule 59, Plaintiff continues to assert that, absent a review of the films, Dr. Leslie's testimony was "pure speculation on his part, where he did not review the diagnostic films to make any determination as to the existence and severity of the scapholunate ligament tear in the Plaintiff's wrist." (Plf's Mem. at 8.) According to Plaintiff, "Without review of the

actual films, Dr. Leslie's opinions are not based on a reliable foundation." (Plf's Mem. at 9.) Yet, Plaintiff cannot and has not articulated any *significant* distinction between the information contained on the radiographic films and the reports interpreting same, which reports were reviewed, considered and relied upon by Dr. Leslie in forming the opinions he articulated to the jury. The pertinent radiographic images, indeed, indicate that the plaintiff sustained a tear to her scapholunate ligament; the reports relative thereto concur. As Plaintiff cannot show any significant distinction that would render Dr. Leslie's opinions ill-founded, Plaintiff has not sustained her burden under Rule 59 as to this issue.

Once again, Plaintiff omits the significant exchange as to the issue. In relevant portions, Plaintiff interrogated Dr. Leslie as to this alleged shortcoming as follows:

> Q. And without you having the films to look at, you can't tell this jury one way or the other if there was a complete tear or not, is that correct?
>
> A. **The films would not make a difference, sir.** An MRI scan or the plain x-rays themselves do not always show a complete ligament tear.
> To underscore that, you have x-rays or MRI scans that can look like it's a complete tear, and you go in and operate, either with an arthroscope and looking in, or perhaps cutting the wrist and looking in, and still see ligament attached.
> In other words, the most accurate way to identify a ligament injury is with your eyeballs, not with an x-ray, not with an MRI scan.
>
> Q. But Doctor, you would agree that on an MRI film, it could show a ligament and a tear in the ligament?
>
> A. What I would agree is that an MRI scan is a nice way of looking at the scapholunate ligament, but it is not the gold standard. **And by that, I mean <u>we routinely do not get MRI scans if we clinically suspect that a ligament is torn because it's not going to change anything</u>.**
> On the other hand, an MRI scan can give you false information. It could suggest that the ligament is intact, or partially intact, when in fact it's significantly torn. (12/14/2006 Tr. at 67-68)(emphasis added).

Here, Plaintiff's argument should be rejected as it ignores Dr. Leslie's testimony that radiographic imagery, while helpful as a diagnostic tool, cannot be relied upon to demonstrate the severity of a scapholunate tear. Moreover, as Dr. Leslie explained to the jury, when an

orthopedist clinically suspects that a ligament is torn, an MRI scan is “not going to change anything”.

Finally, to assess whether any manifest injustice has occurred as to this issue, it becomes necessary to contextualize the issue. Broadly, Dr. Leslie opined, *inter alia*, that surgery should not have been performed on the plaintiff because of a developing dystrophy. Plaintiff fails to articulate how either the degree of widening or an the amount of ligament that may or may not have been present on the radiographic images would have any bearing on this opinion.

As the jury learned, the ligament was visualized during Dr. Akelman’s surgery. Neither Dr. Leslie nor Plaintiff’s expert, Dr. Rozmaryn, were in the operating room during the surgery; neither expert need have been in order to formulate a reliable, well-founded expert opinion.

**CONCLUSION**

Defendant prevailed in this civil action after a full and fair trial. The jury properly decided this case in accordance with the overwhelming weight of the evidence, guided by appropriate expert opinions on each side. Based on the reasons articulated herein, no reason exists for this case to be retried.

Defendant,
ROBERT C. MARCHAND, M.D.
By His Attorneys,

/s/ David W. Carroll
/s/ Jason C. Preciphs
David W. Carroll #0561
Jason C. Preciphs #6727
ROBERTS, CARROLL, FELDSTEIN & PEIRCE INC.
Ten Weybosset Street, 8th Floor
Providence, RI 02903
401-521-7000; (401) 521-1328 (fax)
dcarroll@rcfp.com;
jpreciphs@rcfp.com

**CERTIFICATION**

I hereby certify that on this 16th day of January, 2007 the within document was filed electronically through the ECF System, where it is available for viewing and downloading by the following registered participant(s):

Thomas A. Tarro, III, Esq.
Kris Macaruso Marotti , Esq.
The Summit East – Suite 330
300 Centerville Road
Warwick, RI 02886
ttarro3rd@tarrolawfirm.com
kmarotti@tarrolawfirm.com

/s/ Jason C. Preciphs